A92A1752. RICHMOND COUNTY v. 0.153 ACRES OF LAND et al.
(430 SE2d 47)

POPE, Chief Judge.

Condemnee BP Oil Company owns the land at issue in this condemnation case at the corner of Washington Road and Pleasant Home Road in Richmond County, on which is constructed a convenience store and fuel pumps. Originally the store was operated by an independent third party under contract with the condemnee, but by the time of the trial in this case the contract had expired and condemnee had assumed the operation of the business on the property. Condemnor Richmond County took a strip of land along both road frontages totaling 0.153 acres for the purpose of constructing a right-turn-only lane from Washington Road onto Pleasant Home Road as part of a larger project known as Riverwatch Parkway. The taking also included a permanent easement and two temporary construction easements.

With its declaration of taking, condemnor tendered to the regis-

try of the Superior Court the sum of $109,623 as its estimate of compensation due. At the jury trial of the case, the issue in controversy between the parties was whether condemnee had suffered consequential damages. Condemnor presented the testimony of expert witnesses who testified to their opinion that the taking resulted in no consequential damages and that just and adequate compensation for the taking of the land amounted to no more than $113,500. Over the condemnor's objection, the trial court permitted condemnee to present evidence of consequential damages. Condemnee presented the testimony of an expert witness who testified to his opinion that the value of the actual taking amounted to $102,500 and that consequential damages to the remainder of the property amounted to $187,500. The jury returned an award of $192,500. Condemnor appeals.

1. Condemnee's claim for consequential damages was based primarily upon the assertion that access to the property would be impaired by changes to the two roads adjacent to the property made in conjunction with the taking. Relying upon the fact that the existing curb cuts for vehicular access to the property will be replaced when the turn lane is constructed, condemnor argues that the trial court erred by failing to rule as a matter of law that no impairment of access to the property would result and by permitting condemnee to present evidence of impairment. We reject condemnor's argument. Evidence was presented that the curb cuts would be closer to the corner of the intersection, thereby making ingress and egress more difficult. Evidence was also presented that the newly constructed turn lane would be a continuous movement lane. Before the change, vehicles attempting to make a left turn onto the property could expect both lanes of on-coming traffic to stop for the traffic signal at the corner of the intersection and therefore could turn left between stopped vehicles. After the change, however, vehicles turning left will have to negotiate a third lane of on-coming traffic which will not be required to stop at the traffic signal because the lane will be designed for continuous movement. Expert testimony was presented that the change would make ingress and egress more difficult and hazardous. Sufficient evidence was thus presented to create an issue for jury determination concerning impairment to access.

2. Condemnor argues the trial court erred in permitting condemnee to introduce evidence of expected damage to its business as part of its claim for consequential damages. We agree. It is undisputed that the taking, at most, resulted in only a partial destruction of the business conducted on the property. When there has not been a total destruction of the business operated by the owner of the property, evidence of damage to the business may not be the basis for compensation except as evidence to help establish the market value of the remainder of the property. *Dept. of Transp. v. Consolidated Eq-*

*uities Corp.*, 181 Ga. App. 672 (353 SE2d 603) (1987); *Dept. of Transp. v. Kendricks*, 148 Ga. App. 242 (250 SE2d 854) (1978); *Dept. of Transp. v. Dent*, 142 Ga. App. 94 (235 SE2d 610) (1977); *Williams v. State Hwy. Dept.*, 124 Ga. App. 645 (2) (185 SE2d 616) (1971). The testimony of condemnee's expert witnesses clearly shows that their estimates of the consequential damage to the remaining property consisted of a figure which combined the consequential loss to the fair market value of the remaining real property with the consequential loss to the fair market value of the business as a going concern. Thus, the evidence of consequential damages presented by condemnee improperly included a separate amount for the consequential loss to condemnee's business.

We reject condemnee's argument that the combined figure merely represented the total loss to the property. It is true, as condemnee argues, that this court in *Kendricks* described the real property and the business an owner conducts on it as "one property right." *Kendricks*, 148 Ga. App. at 245. We went on, however, to state that "the partial business loss cannot be established as a separate item of damage but is a matter going to the diminution in the value of the property." Id. Contrary to condemnee's argument, the term "property" in the above-cited cases does not include the value of an owner-operated business. In regard to an owner-operator of a business, consequential damages are allowed only for damages to the real property, and not, as the condemnee argues, the value of the real property and the business combined as one loss. "When a partial taking damages a business, the market value of the remaining *land* is affected by the 'best use rule.' . . . The resulting decrease in the market value of the remaining *land* is the consequential damage." (Emphasis supplied and punctuation omitted.) *Williams v. State Hwy. Dept.*, 124 Ga. App. at 647. See also *Buck's Svc. Station v. Dept. of Transp.*, 259 Ga. 825, 827 (387 SE2d 877) (1990) (in which the Georgia Supreme Court reiterated that evidence of loss of business is admissible to demonstrate the fair market value of land not taken because "business property facing loss of business may suffer a diminution in fair market value").

The rule is different for a third party, such as a lessee of the condemnee, who operates a business on the condemnee's property. A lessee-operator of a business upon the condemned property may be entitled to an award for partial loss of business, separate from the award to the owner for consequential damage to the real property. "When the business belongs to the landowner, total destruction of the business at the location must be proven before business losses may be recovered as a separate element of compensation. [*Dept. of Transp. v. Dent*, 142 Ga. App. 94 (235 SE2d 610) (1977).] On the other hand, when the business belongs to a separate lessee, the lessee may recover

for business losses as an element of compensation separate from the value of the land whether the destruction of his business is total or merely partial, provided only that the loss is nc ̣ remote or speculative. *Kendricks*, [148 Ga. App. 242, supra]." *Dep ̣ . of Transp. v. Dixie Hwy. Bottle Shop*, 245 Ga. 314, 315 (265 SE2d 10) (1980). Condemnee argues, therefore, that this rule unfairly discriminates between owner-operators of businesses and lessee-operators and therefore violates the constitutional guarantee of equal protection. Even if we were persuaded by condemnee's argument, we are constrained by the Georgia Supreme Court's adoption of this court's case law to affirm the rule.[1]

*Judgment reversed. Johnson, J., concurs. Carley, P. J., concurs in judgment only.*

DECIDED MARCH 4, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993 ▮▮▮▮▮▮▮▮

*Burnside, Wall, Daniel & Ellison, Harry D. Revell*, for appellant.
*Hull, Towill, Norman & Barrett, Patrick J. Rice, Alston & Bird, Walter G. Elliott II*, for appellees.

---

[1] We note, however, that the Georgia Supreme Court has indicated that in a proper case it would consider the argument "that application of the appellate case law distinguishing landowner-operated businesses from tenant-operated business violates the Equal Protection Clause of the Georgia and U. S. constitutions." *Timmers Chevrolet v. Dept. of Transp.*, 261 Ga. 270, 271, n. 1 (404 SE2d 121) (1991).